UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MEGAN CRISANTE**
**and PMP CAFÉ,**

     **Plaintiffs,**

     **v.**                 **Case No. 8:11-CV-2007-T-17TBM**

**JIM COATS, individually and in his**
**official capacity as Sheriff of Pinellas**
**County, Florida, et al.,**

     **Defendants.**
_____/

## ORDER ON MOTION TO DISMISS

     This cause is before the Court on:

Dkt. 26     Motion to Dismiss
Dkt. 34     Response

     For the reasons set forth below, Defendants' Motion to Dismiss (Dkt. 26) is denied as to Count I (Due Process), but granted with prejudice as to Counts II (First Amendment) and IV (Injunctive Relief), and granted without prejudice as to Counts III (Equal Protection) and V (Replevin).  Further, Defendants' motion to dismiss all claims against Sheriff Coats in his official and individual capacities is granted.  The following facts, taken as true for purposes of the instant motion, are gleaned from Plaintiffs' Verified Complaint (Dkt. 2).

Case No. 8:11-CV-2007-T-17TBM

## BACKGROUND

Plaintiffs, Megan Crisante and PMP Café, LLC (hereinafter referred to as "Crisante" or "Plaintiffs"), filed the instant action against Jim Coats, individually and in his official capacity as Sheriff of Pinellas County, Florida, and Jason Bahret and Paul J. Giovanni, two detectives with the Pinellas County Sheriff's Office (hereinafter collectively referred to as "Defendants"), on September 2, 2011.  Crisante seeks declaratory and injunctive relief preventing Defendants from taking any further enforcement action against either her personally or against her business, Palm Harbor Internet, pursuant to Florida's anti-gambling laws.  Crisante claims Palm Harbor Internet runs a legitimate sweepstakes promotion under Florida law and that her actions are protected by the First, Fourth, Fifth, and Fourteenth Amendments to the Untied States Constitution.

"Palm Harbor Internet sells prepaid long distance telephone cards, prepaid cellular phones, cellular accessories, internet access time, and . . . printing, faxing, and copying services." (Dkt. 2, at ¶ 18).  It also operates a game promotion whereby customers receive entries to a promotional "sweepstakes" proportionate to the number of phone card minutes they purchase.  (Dkt. 2, at ¶ 30).  Customers can receive a free entry by mailing a request to Phone-Sweeps, the sweepstakes sponsor, or by making a request in person at Palm Harbor Internet itself.  (Dkt. 2, at ¶ 30).

> [C]ustomers may use the computers on site to access the results of the
> sweepstakes.  Customers who use the computers to access their results
> ordinarily do so because the computers display the results in connection
> with an entertaining video game.  This method of showing the results is

2

Case No. 8:11-CV-2007-T-17TBM

> commonly called "game display," and it is the images used by the game display to communicate the results of the sweepstakes that has caused Defendants to pursue [enforcement] action.
>
> The "game display" uses video games to animate raw computer data and inform the customer whether a sweepstakes entry contains a winning value. The video games use alphanumeric text, graphic icons, and animations, some of which include simulations of casino games, to covey the information. . . . [C]ustomers may interact with the games but cannot affect the results of the entries.

(Dkt. 2, at ¶ 36–37). If customers do not wish to partake in the "game display" method of learning their sweepstakes result, they can "learn if they have won the sweepstakes by requesting the cashier to reveal the results via alphanumeric text, without fanfare on the point of sale computer." (Dkt. 2, at ¶ 38). In any event, customers who win the sweepstakes are paid a cash prize, ostensibly on premises at Palm Harbor Internet.

Crisante claims the State of Florida has engaged in a pattern of harassment against sweepstakes promotions through baseless criminal prosecutions and property seizures. To that end, she cites nineteen criminal prosecutions against similar sweepstakes retailers throughout the state, none of which were successful, and five civil forfeiture actions, all of which were voluntarily dismissed, but in one of which the property was not returned to its owner. (Dkt. 2, ¶ 48–49). Crisante also notes a specific case brought by the Pinellas County Sheriff's Office against Mike's Internet Café, and points out that said prosecution ended in dismissal of the charges by the state attorney and voluntary dismissal of the Sheriff's forfeiture complaint. (Dkt. 2, at ¶ 50–54). Crisante accordingly claims that "[i]f prosecution ensues in the instant case, there is no reasonable likelihood of the Defendants' obtaining a valid conviction." (Dkt.

3

Case No. 8:11-CV-2007-T-17TBM

2, ¶ 70). With specific regard to Sheriff Coats, Crisante claims that Coats' comments to the news media evince "a custom and policy with [the Sheriff's] office specifically targeting Palm Harbor Internet's business model." (Dkt. 2, ¶ 74).

Crisante contends that "[t]he Sheriff, intentionally, or with reckless disregard for the truth, made material misrepresentations of fact in the Search Warrant Affidavit" leading up to the issuance and execution of a search warrant at Palm Harbor Internet, pursuant to which Defendants seized some eighty personal computers from Defendants' business. (Dkt. 2, ¶¶ 79–81). Detectives Bahret and Giovannoni presented a Search Warrant Affidavit (hereinafter "affidavit") to The Honorable Thomas McGrady, Pinellas County Circuit Judge, on July 14, 2011; Judge McGrady issued the warrant that same day. (Dkt. 2, ¶ 99). Crisante avers that the affidavit included various representations that Bahret and Giovannoni knew to be false, including:

a.   "said business . . . offers a sole product for sale . . ."

b.   "after the free [sweepstakes] points are used additional points can be purchased."

c.   "'sweepstakes points' can be purchased on the device with the winnings . . ."

d.   "the product being offered . . . is not in the forefront of the business . . . ."

e.   "While there is some indication within the business of the consumer product offered it is over whelmed [sic] by the advertisement within the business to play sweepstakes and win cash."

f.   "the employee did not attempt to sell your Affiants a phone card . . . ."

Case No. 8:11-CV-2007-T-17TBM

g.  "Your Affiants also found that they could purchase additional chances to play the device . . . ."

h.  "they [the games] all allowed the wagering of funds."

i.  "There was little or no indication in the business of the consumer service offered."

j.  "By entering the PIN, the user's account is accessed via the network and the electronic funds are available to be wagered."

(Dkt. 2, ¶ 81).  Crisante claims each of the statements above is false and that Bahret and Giovannoni knew as much when they swore to the affidavit; she also contends that, but for these misrepresentations, the search warrant would not have issued.

Based upon the foregoing, Crisante urges that Defendants' seizures pursuant to the search warrant were made without probable cause.  (Dkt. 2, ¶ 86). She also claims that the items Defendants seized (which include numerous personal computers, a safe, a sum of United States currency, a fax machine, a digital video recorder, and a scanner) exceeded the scope of the search warrant, further violating Crisante's Fourth Amendment right to be free from unreasonable searches and seizures.

The true gravamen of the complaint, however, is Crisante's contention that "[t]he Defendants undertook this enforcement action to prohibit Palm Harbor Internet's method and substance of communication relating to its [legal] sweepstakes." (Dkt. 2, ¶ 103).  Crisante essentially argues that her sweepstakes promotion is consistent with Florida law and that Defendants' enforcement action amounts to an unconstitutional content-based restriction on lawful speech. (Dkt. 2, ¶¶ 103–09).  This Court described

5

Case No. 8:11-CV-2007-T-17TBM

the relevant gambling statutes, as well as Florida's game promotion exemption, in its

previous order denying Plaintiffs' motion for a preliminary injunction:

> Section 849.08, Fla. Stat., which is entitled "Gambling," states: "[w]hoever plays or engages in any game at cards, keno, roulette, faro or other game of chance, at any place, by any device whatever, for money or other thing of value, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083."

> Under Florida law, sweepstakes or "'game promotion' means . . . a contest, game of chance, or gift enterprise, conducted within or throughout the state and other states in connection with the sale of consumer products or services, and in which the elements of chance and prize are present." Fla. Stat. § 849.094(1)(a).

> "Any machine or device is a slot machine or device within the provisions of this chapter if it is one that is adapted for use in such a way that, as a result of the insertion of any piece of money, coin, or other object, such machine or device is caused to operate or may be operated and if the user, by reason of any element of chance or of any other outcome of such operation unpredictably by him or her, may: (a) [r]eceive or become entitled to receive any piece of money, credit, allowance, or thing of value, or any check, slug, token, or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance, or thing of value . . . ; or (b) [s]ecure additional chances or rights to use such machine, apparatus, or device, even though it may, in addition to any element of chance or unpredictable outcome of such operation, also sell, deliver, or present some merchandise, . . . or other thing of value." Fla. Stat. § 849.16(1).

> Florida law prohibits the use of slot machines or devices, "pursuant to which the user thereof, as a result of any element of chance or other outcome unpredictable to him or her, may become entitled to receive any money, credit, allowance, or thing of value or additional chance or right to use such machine or device, or to receive any check, slug, token or memorandum entitling the holder to receive any money, credit, allowance or thing of value." Fla. Stat. § 849.15(1)(b).

(Dkt. 45, at 14–15).

6

Case No. 8:11-CV-2007-T-17TBM

In Count I of the complaint, Crisante sets forth a claim under 42 U.S.C. § 1983 for violation of her Fourth Amendment rights. (Dkt. 2, ¶ 117–19). She contends that the search warrant was insufficient to establish probable cause with regard to a violation of Florida's gambling laws and that Defendants' seizure of Plaintiffs' property exceeded the scope of the warrant. (Dkt. 2, ¶ 120). She further argues that "[t]he Sheriff has a custom and policy of unjustified and unlawful enforcement against businesses like Palm Harbor Internet that . . . caused the violation of [her] constitutional rights." (Dkt. 2, ¶ 122).

Count II sets forth a § 1983 claim for violation of Crisante's First Amendment rights. Here, Crisante claims that "use of Plaintiffs' computers to electronically communicate the results of a contest, promotion, or sweepstakes and to provide entertaining video games in connection therewith is both pure speech and expressive activity . . . within the ambit of the First Amendment. Defendants' enforcement actions have completely eliminated Plaintiffs' customers' ability to engage in this activity." (Dkt. 2, ¶ 127).    According to Crisante, Defendants' enforcement actions have abridged her right to engage in lawful game promotions under Florida law, even if those sweepstakes promotions "include[] video game displays of images of Las Vegas slot games." (Dkt. 2, ¶ 137).

Count III contains a § 1983 claim under the Equal Protection Clause of the Fourteenth Amendment. Cristante's theory here is that "Defendants have violated Plaintiffs' rights to equal protection under the law, as similarly situated busiensses are

Case No. 8:11-CV-2007-T-17TBM

permitted to conduct sweepstakes pursuant to Florida law[, and] Plaintiffs have been

unreasonably classified and discriminated against based upon their chosen method of

revealing sweepstakes entries." (Dkt. 2, at ¶ 143).  In particular, Crisante claims that

"Defendants have irrationally discriminated against [her,] presumably because [she]

display[s] casino images in connection with informing participants in [her] sweepstakes

whether they have won."  (Dkt. 2, ¶ 147).  She further contends that "Defendants permit

countless other promotion sweepstakes in their jurisdiction that are offered online and

that pay cash as a prize," including the "Challenge Butter '100 Years, 100 Days of

Winners' Sweepstakes," the "Cheez-It 'Real American Roadtrip' Sweepstakes," and the

"American Family '$50,000 in Cold, Hard Cash' Sweepstakes."  (Dkt. 2, ¶ 147).

Crisante claims Defendants are discriminating against her and her business "to harass

Plaintiffs and extinguish their First Amendment activity because of Defendants' dislike

for the content of the communications."  (Dkt. 2, ¶ 150).

Crisante styles Count IV as "Temporary and Permanent Injunctive Relief," and

alleges that "Defendants' actions, with the resulting closure of Palm Harbor Internet, will

result in a substantial loss of First Amendment freedoms – even if Plaintiffs eventually

prevail in the trial on the merits."  (Dkt. 2, ¶ 153).  She claims the "threat of civil and

criminal penalties . . . creates an imminent risk of irreparable harm" due to the potential

loss of Plaintiffs' purported First Amendment freedoms, that she has no adequate

remedy at law, and that the public interest favors issuance of an injunction.  (Dkt. 2, ¶

153–58).  Crisante prays for a preliminary injunction as well as "a permanent injunction

8

Case No. 8:11-CV-2007-T-17TBM

enjoining, restraining, and prohibiting Defendants, their agents, officers, servants, and

employees from taking further action against Plaintiffs for their business operation."

(Dkt. 2, ¶ 158).  This Court denied Plaintiffs' request for a preliminary injunction in an

order dated April 17, 2012, leaving only the permanent injunction element of Count IV

for resolution here.  (Dkt. 45).

In each of Counts I through IV, Crisante seeks declaratory judgments

pronouncing Defendants' actions unconstitutional, in addition to costs and attorneys'

fees as per 42 U.S.C. § 1988.

Finally, in Count V, Crisante requests a Writ of Replevin "pursuant to 42 U.S.C.

§ 1983 and Fla. Stat. § 78.01 *et seq.*"  She seeks to replevy all the property taken

pursuant to the search warrant, arguing that the Defendants seized said property "under

the false pretense that it constitutes illegal gambling paraphernalia."  (Dkt. 2, ¶ 163–66).

In addition to the writ of replevin, Crisante also requests monetary damages, costs, and

attorneys' fees.  (Dkt. 2, ¶ 166).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 8(a)(2) requires that a plaintiff's complaint

lay out "a short and plain statement of the claim showing that the pleader is entitled to

relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1957).  That said, "[w]hile a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

9

Case No. 8:11-CV-2007-T-17TBM

requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 555 (2007)

(internal quotation marks and citation omitted).

Therefore, "to survive a motion to dismiss, a complaint must now contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010)

(quoting *Twombly*, 550 U.S. at 570).  In considering a motion to dismiss, courts follow a

simple, two-pronged approach: "1) eliminate any allegations in the complaint that are

merely legal conclusions; and 2) where there are well-pleaded factual allegations,

'assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief.'" *Id.* at 1290 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

In sum, the "pleading standard Rule 8 announces does not require 'detailed factual

allegations,' but demands more than an unadorned, the defendant-unlawfully-harmed-

me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

Defendants essentially wage a three-pronged attack on the sufficiency of

Crisante's complaint.  First, Defendants claim Crisante has failed to demonstrate a

municipal policy sufficient to support § 1983 liability with regard to the claims against

Sheriff Coats in his official capacity.  Next, they contend Crisante has failed to state a

claim upon which relief can be granted with respect to the substantive allegations in

each of Counts I through V.  And finally, Defendants argue that Crisante's claims

Case No. 8:11-CV-2007-T-17TBM

against Sheriff Coats and Detectives Bahret and Giovannoni in their individual

capacities must be dismissed because each is qualifiedly immune from damages.  As

will be shown, though Defendants' third argument is unavailing, the former two are well-

taken; the Court will accordingly grant Defendants' motion in part and dismiss Counts II

and IV with prejudice and Counts III and V without prejudice.  The Court also denies

Defendants' motion as to Count I, but grants Defendants' motion to dismiss all counts

against Sheriff Coats in his official and individual capacities without prejudice.

### 1. Claims Against Sheriff Coats

Defendants first argue that Crisante's complaint fails to allege the official custom

or policy necessary to sustain § 1983 liability against Sheriff Coats in his official

capacity.  "Official-capacity suits . . . 'generally represent only another way of pleading

an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473

U.S. 159, 165 (1985) (quoting *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658,

690 n.55 (1978)).  Therefore, Crisante's claims against Coats in his official capacity are

in actuality claims against either Pinellas County or the Pinellas County Sheriff's Office.

*See Samarco v. Neumann*, 44 F. Supp. 2d 1276, 1287 (S.D. Fla. 1999) (""[A]cts of

Sheriff Neumann found violative of § 1983 are capable of imputing liability upon the

Palm Beach County Sheriff's Office.").  As the Eleventh Circuit itself has noted,

however, its "decisions have not been entirely consistent on whether the relevant entity

in an official-capacity suit against a sheriff in Florida is the County or the Sheriff's

Department (as a unit operating autonomously from the County)."  *Brown v. Neumann*,

11

Case No. 8:11-CV-2007-T-17TBM

188 F.3d 1289, 1290 n.2 (11th Cir. 1999).  But the determination of which entity is the

proper defendant in an official-capacity suit against the sheriff is of no moment here;

because Crisante's official capacity claims fail for a more fundamental reason, this

Court need not—and will not—pass upon that more peripheral question to resolve the

instant dispute.

That is so because, regardless of all else, in order to prevail on her claims

against Coats in his official capacity under § 1983, Crisante must prove that actions

taken under color of state law deprived her of her federal rights, and that an *official*

policy—"a municipal policy of some nature"—caused the constitutional tort.  *Monell*, 436

U.S. at 691.  "In other words, a municipality may not be found liable simply because

one of its employees committed a tort."  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397,

405 (1997).  Put yet another way:

> Section 1983 liability may not be premised solely upon a respondeat
> superior theory—i.e., a county may not be held liable solely by virtue of
> the employment relationship linking it to the offending employee.  Rather,
> only deprivations undertaken pursuant to governmental "custom" or
> "policy" may lead to the imposition of governmental liability.

*Mandel v. Doe*, 888 F.2d 783, 791 (11th Cir. 1989).  To be sure, in certain situations

municipal liability can be imposed for the single decision of a municipal official, but only

if that official is endowed with final policymaking authority.  *Id.* at 792 (citing *City of St.*

*Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

Given those elementary principles, the Court need not belabor the point,

because Crisante's Verified Complaint contains none of the predicate facts necessary

12

Case No. 8:11-CV-2007-T-17TBM

to support a claim against Defendant Coats in his official capacity.  Though Crisante

points to her citation of various comments Sheriff Coats made to the news media as

evidence of a policy or custom, such statements are insufficient to show a plausible

claim that the Sheriff maintained an unconstitutional custom or practice.  (Dkt. 2, ¶¶

74–80).  There is nothing remotely objectionable—let alone unconstitutional—about the

Sheriff's statements.  And without those statements, the only discussion at all of Sheriff

Coats in Crisante's entire complaint consists of conclusory assertions such as, "The

Sheriff has a custom and policy of unjustified and unlawful enforcement against

business like Palm Harbor Internet that constituted deliberate indifference to Plaintiffs'

constitutional rights, and that policy caused the violation of Plaintiffs['] constitutional

rights."  (Dkt. 2, ¶ 122).  This Court disregards such unadorned legal conclusions,

leaving Crisante with nothing at all upon which to base § 1983 liability against Coats.

*See Am. Dental Ass'n*, 605 F.3d at 1290 (explaining that the first step in any court's

Rule 12(b)(6) inquiry is to "eliminate any allegations in the complaint that are merely

legal conclusions"); *see also Rosario v. Miami-Dade Cnty.*, 490 F. Supp. 2d 1213, 1221

(S.D. Fla. 2007) (noting that, "[a]s a general rule, conclusory allegations and

unwarranted deductions of fact are not admitted as true in a motion to dismiss."

(alteration in original) (internal quotation marks omitted)).  Because Crisante's

allegations against Defendant Coats in his official capacity contain no more than a

"formulaic recitation of the elements of a cause of action," the Court grants Defendants'

motion to dismiss those claims without prejudice.  *See Twombly*, 550 U.S at 555.  And

Case No. 8:11-CV-2007-T-17TBM

because Crisante does not actually allege that Defendant Coats did *anything at all* personally (other than make a few immaterial comments to the news media, (Dkt. 2, ¶¶ 74–80)), the claims against Sheriff Coats in his individual capacity will also be dismissed without prejudice.  If and when Plaintiffs amend their complaint, they can attempt to correct these deficiencies in order to state a claim for municipal liability and individual liability as to Sheriff Coats under § 1983.

### 2. Failure to State a Claim

#### A. Count I: Fourth Amendment

Crisante next alleges that her property was seized in violation of the Fourth Amendment because Detectives Bahret and Giovannoni included intentional misrepresentations in their search warrant affidavit.  Defendants claim that, even if there are falsehoods in the search warrant, such misstatements are immaterial because, even excluding those components of the affidavits, there was sufficient probable cause to support the seizure of Plaintiffs' property.

Defendants' theory rests on the assumption that, "to determine whether the movant's Fourth Amendment rights were violated, the Court must consider: (1) whether the alleged misstatements in the affidavit were made either intentionally or in reckless disregard for the truth and, if so, whether, after deleting the misstatements, the affidavit is insufficient to establish probable cause." (Dkt. 26, at 9) (citing *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978)).  But "[n]othing in the [*Franks*] opinion suggests that the Supreme Court intended to establish pleading requirements for a section 1983 claim

14

Case No. 8:11-CV-2007-T-17TBM

against a law enforcement officer or agency for an allegedly unlawful arrest" or,

presumably, for an allegedly unlawful search or seizure. *Gordon v. Beary*, No. 6:08-cv-

73-ORL-19KRS, 2008 WL 3258496, at *6 (M.D. Fla. Aug. 6, 2008) (Fawsett, C.J.).

"Rather, to maintain a section 1983 claim[, Plaintiffs] must establish the violation of an

underlying federal right as it has been defined by the controlling case law." *Id.*

 "When the Fourth Amendment demands a factual showing sufficient to comprise

'probable cause,' the obvious assumption is that there will be a *truthful showing*."

*Franks*, 438 U.S. at 164–65 (citation omitted) (emphasis in original).  And though this

truthfulness requirement does not mean "that every fact recited in the warrant affidavit

is necessarily correct . . . [it does mean, at a minimum,] that the information put forth is

believed or appropriately accepted by the affiant as true." *Id.* at 165.  "Thus, a police

officer may be held liable under 42 U.S.C. § 1983 for submitting an application for an

arrest warrant that contains false information." *Holmes v. Kucynda*, 321 F.3d 1069,

1083 (11th Cir. 2003); *see Kingsland v. Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004)

("[F]alsifying facts to establish probable cause is patently unconstitutional and has been

so long before [the plaintiff's] arrest in 1995.").

 In their complaint, Plaintiffs assert that Defendants made material

misrepresentations of fact in the search warrant affidavit such that they fabricated the

probable cause necessary to sustain the seizure of Plaintiffs' property.  (Dkt. 2, at

¶¶ 81–86).  Taken as true, as they must be at this stage of the litigation, these

allegations are sufficient to state a claim for the violation of Cristante's Fourth

Case No. 8:11-CV-2007-T-17TBM

Amendment rights. *See Holmes*, 321 F.3d at 1083–84 (reversing district court's grant

of summary judgment on this issue because "the facts support a conclusion that [the

officer's] warrant application included deliberately false statements"); *Kelly v. Curtis*, 21

F.3d 1544, 1554 (11th Cir. 1994) (noting that "a police officer violates the Constitution

by obtaining a warrant based on perjurious or recklessly false testimony"); *see also*

*Gordon*, 2008 WL 3258496, at *6 ("[Plaintiff] contends that her property was seized

without probable cause and retained even after criminal charges were dropped . . . Her

allegations are sufficient to establish a violation of the Fourth Amendment.").  True

enough, Crisante's Fourth Amendment claim will ultimately fail if she cannot show that

knowing or reckless misrepresentations were made, but to make such a determination

here would be to place the cart before the horse because, as any first-year civil

procedure student knows, the Court must take all of Crisante's allegations as true in

ruling on the instant motion to dismiss. *Twombly*, 550 U.S. at 555 (explaining that, on a

Rule 12(b)(6) motion, the assumption is "that all the allegations in the complaint are true

(even if doubtful in fact)").  Defendants' motion to dismiss Count I is denied.

i. Qualified Immunity

Defendants also argue that, even if Detectives Bahret and Giovannoni might

ordinarily be liable for the alleged violation of Crisante's Fourth Amendment rights, the

Court should dismiss the claims against them under a theory of qualified immunity.

First, it is axiomatic that "qualified immunity may not be effectively asserted as a

defense to a claim for declaratory or injunctive relief." *Ratliff v. DeKalb Cnty*, 62 F.3d

16

Case No. 8:11-CV-2007-T-17TBM

338, 340 n.4 (11th Cir. 1995).  At the same time, it is equally clear that "for qualified

immunity purposes, the term 'damages' includes costs, expenses of litigation, and

attorneys' fees claimed by a plaintiff against a defendant in the defendant's personal or

individual capacity." *D'Aguanno v. Gallagher*, 50 F.3d 877, 881 (11th Cir. 1995).

In this case, Crisante seeks declaratory relief, costs and attorneys' fees against

all Defendants as to Counts I through IV.  Based upon the foregoing, it is plain that

qualified immunity will not shield Detectives Bahret and Giovannoni from declaratory

judgments that their conduct was constitutionally offensive.  Qualified immunity,

however, might well preclude Crisante's recovery of the prayed-for costs and fees, *but*

*only if* the right Defendants allegedly violated was not clearly established at the time of

the constitutional violation.

"Qualified immunity offers complete protection for government officials sued in

their individual capacities as long as their conduct violates no clearly established

statutory or constitutional rights of which a reasonable person would have known."

*Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir. 2012) (internal quotation marks omitted).

"The purpose of this immunity is to allow government officials to carry out their  duties

without the fear of personal liability or harassing litigation, protecting from suit 'all but

the plainly incompetent or one who is knowingly violating the federal law.'" *Lee v.*

*Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citations omitted) (quoting

*Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)).

17

Case No. 8:11-CV-2007-T-17TBM

Crisante accuses Detectives Bahret and Giovannoni of intentionally or recklessly submitting a false affidavit in support of the warrant that led to the seizure of the Palm Harbor Internet property.   (Dkt. 2, at ¶¶ 81–86).  If the detectives intentionally falsified the search warrant affidavit (and this Court must assume as much here), then, they would have knowingly violated the law, and even the broad shroud of qualified immunity will not protect them.  *Holmes*, 321 F.3d at 1084 ("If a reasonable officer would have known that [the officer's] testimony was not just negligently false, but recklessly so, then [that officer] is not entitled to qualified immunity." (internal quotation marks omitted)); *Kelly*, 21 F.3d at 1554 (noting that "a police officer violates the Constitution if, in order to obtain a warrant, she perjures herself or testifies in reckless disregard of the truth"); *see also Garmon v. Lumpkin Cnty.*, 878 F.2d 1406, 1410–11 (11th Cir. 1989) (holding that qualified immunity did not protect sheriff who directed an investigator to submit a warrant application containing knowingly false statements).  The Court pauses to note that its determination is not a finding that Defendants will not eventually be entitled to qualified immunity; to the contrary, once Plaintiffs are put to their proof, and in the event they fail to create a material issue of fact as to whether the alleged misstatements were intentionally or recklessly made, or whether the warrant would have issued in any event, summary judgment may well be appropriate.

### B. Count II: First Amendment

The true locus of Crisante's cause of action is her argument that, by seizing the Palm Harbor Internet property, property she alleges was being used to carry out her

Case No. 8:11-CV-2007-T-17TBM

wholly lawful game promotion enterprise, Defendants unconstitutionally suppressed her

ability to engage in speech related to gambling and, as such, violated the First

Amendment.  Just as it did at the preliminary injunction stage, however, *see* Dkt. 45,

Crisante's argument here too must fail.  As this Court explained in holding that Crisante

had failed to demonstrate a substantial likelihood of success on the merits:

> [T]his court has recently decided a similar case, *Allied Veterans of the
> World, Inc.: Affiliate 67 v. Seminole County*, that illuminates many of the
> issues at play here.  783 F. Supp. 2d 1197 (M.D. Fla. 2011) (Antoon, J.)
> (hereinafter "*Allied Veterans I*"), aff'd, No. 11-12185, 2012 WL 933342
> (11th Cir. Mar. 21, 2012) (per curiam) (hereinafter "*Allied Veterans III*").
> The plaintiffs in *Allied Veterans* operated Phone-Sweeps businesses
> nearly identical to those implicated in the case *sub judice*, and sued to
> challenge a Seminole County ordinance that prohibited "simulated
> gambling devices"[1] as repugnant to the First Amendment guarantee to
> freedom of speech.  *Allied Veterans I*, 783 F. Supp. 2d at 1199–1201.
> More specifically, and of particular import to the instant case, the plaintiffs
> "assert[ed] that the Ordinance violate[d] the First Amendment as applied
> to them because it [was] a content-based restriction on speech." *Id.* at
> 1202.  This court rejected that argument, noting:
>
>> [T]he Ordinance in no way prohibits access to the internet; it
>> only regulates the simulated gambling devices.
>> Furthermore, although the games played at Operator-
>> Plaintiffs' establishments may constitute protected speech,
>> the Ordinance only bans the games if all elements of the
>> definition of "simulated gambling device" are present.  As
>> noted above, a device must entitle the player to the
>> possibility of a payoff in order to constitute a "simulated
>> gambling device."  None of the video games at issue is
>> banned on its own—only the playing of such a game *in*

---

[1]The ordinance defined "simulated gambling devices" as "any device that, upon
connection with an object, is available to play or operate a computer simulation of any
game, and which may deliver or entitle the person or persons playing or operating the
device to a payoff." *Allied Veterans I*, 783 F. Supp. 2d at 1201.

Case No. 8:11-CV-2007-T-17TBM

> *conjunction* with the possibility of a payoff is banned.
> Therefore, Operator-Plaintiffs are free to provide the video
> games to their patrons and their patrons are free to play
> them—and thus make and receive whatever protected
> message is communicated by the video game—so long as
> the games are not associated with a payoff.
>
> Operator-Plaintiffs also argue that the Ordinance bans
> speech that is "associated with gambling." This argument
> takes the Ordinance out of context. The "associated with
> gambling" language is part of the definition of "game." A
> "game" as defined by the Ordinance includes games that
> are, or could be, associated with gambling. The ordinance
> in no way bars all speech associated with gambling; it only
> bans *games* associated with gambling *if* those games also
> provide the possibility of a payoff.

*Id.* (emphasis in original) (footnote omitted).

Further, in a subsequent order denying the *Allied Veterans* plaintiffs'
motions to stay trial court proceedings pending appeal and for an
injunction pending appeal, this court rejected the plaintiffs' assertion that
*Brown v. Entertainment Merchants Association*, --- U.S. ----, 131 S. Ct.
2729 (2011), and *Citizens United v. Federal Election Commission*, --- U.S.
----, 130 S. Ct. 876 (2010) alter the constitutional analysis, again noting
that the Ordinance did not outlaw the *speech* underlying the sweepstakes
games itself, but rather proscribed the *conduct* of providing a payoff when
facilitating the use of a simulated game device. *Allied Veterans of the
World, Inc.: Affiliate 67 v. Seminole Cnty.*, No. 6:11-CV-155-Orl-28DAB,
2011 WL 3958437, at **1–3 (M.D. Fla. Sept. 8, 2011) (hereinafter *Allied
Veterans II*").

The Eleventh Circuit affirmed the denial of plaintiff's motion for a
preliminary injunction. . . . .

This Court concurs with Judge Antoon's reasoning in both *Allied Veterans
I* and *II*; therefore, and applying the teachings of those cases to the facts
at hand, it quickly follows that any potential enforcement of Florida's
gambling laws pursued by Defendants here restricts conduct, not speech.
The state of Florida is merely investigating a potential violation of its

Case No. 8:11-CV-2007-T-17TBM

> gambling laws. In that regard, the instant case is simply beyond the pale
> of the First Amendment's protection.

(Dkt. 45, at 18–21). Nothing has changed since the Court's order denying a preliminary

injunction in this case, and Judge Antoon's mode of analysis in *Allied Veterans I and II*

still rings true today. At bottom, no matter how many times Crisante amends her

complaint, the fact will remain that the conduct she alleges to be constitutionally

repugnant is simply not contemplated by the First Amendment. And though the Court is

mindful of the liberal pleading standards adhered to in this Circuit, because Crisante's

First Amendment claim is foundationally deficient, it fails to "state a claim to relief that is

plausible on its face.'" *Twombly*, 550 U.S. at 570. Defendants' motion to dismiss

Count II is granted with prejudice.

### C. Count III: Equal Protection

In Count III, Crisante alleges that Defendants violated her equal protection rights

by singling her out for prosecution and thereby "unreasonably classified and

discriminated against [her] based upon [her] chosen method of revealing sweepstakes

entries." (Dkt. 2, ¶ 143). This type of equal protection claim is commonly referred to as

a "class-of-one" claim; it is implicated "where the plaintiff alleges that she has been

intentionally treated differently from others similarly situated and that there is no rational

basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564

(2000).

Case No. 8:11-CV-2007-T-17TBM

The Eleventh Circuit has enunciated an exacting standard for the pleading of class-of-one claims: the plaintiff must allege the existence of some similarly situated individual who was treated more favorably than the plaintiff herself. *Griffin Indus., Inc. v. Irvin.*, 496 F.3d 1189, 1204–05 (11th Cir. 2007). Moreover, this similarly situated requirement requires plaintiffs "to demonstrate that they were treated differently than establishments who are 'prima facie identical in all relevant respects.'" *George's Place, LLC v. Smith*, No. 3:11-cv-1096-J-37JBT, 2012 WL WL 360161, at *8 (M.D. Fla. Feb. 2, 2012) (quoting *Griffin Indus., Inc.*, 496 F.3d at 1204). "The rationale behind this requirement is to allow the court to determine whether the plaintiff's treatment was actually the result of discrimination, as opposed to a decision based on facts peculiar to the plaintiff's situation." *Hawkins v. Eslinger*, No. 6:07-cv-1261-Orl-19GJK, 2008 WL 2074409, at *1 (M.D. Fla. May 15, 2008) (Fawsett, C.J.).

The instant equal protection claim is specifically predicated upon Crisante's allegation that Defendants have engaged in selective law enforcement action against her. "'[F]or selective and reverse-selective enforcement claims, the plaintiff must provide compelling evidence of other similarly situated persons who were in fact treated differently, because the multiplicity of relevant (nondiscriminatory) variables involved in law enforcement decisions are not readily susceptible to the kind of analysis courts are competent to undertake in assessing equal protection claims.'" *Id.* at *2 (quoting *Grubbs v. Gailes*, 445 F.3d 1275, 1282 (10th Cir. 2006)).

Case No. 8:11-CV-2007-T-17TBM

In her complaint, Crisante appears to cite the "Challenge Butter '100 Years, 100 Days of Winners' Sweepstakes," the "Cheez-It 'Real American Roadtrip' Sweepstakes," and the "American Family '$50,000 in Cold, Hard Cash' Sweepstakes" as her similarly situated comparators. (Dkt. 2, ¶ 147). In the Court's view, however, these sweepstakes are only marginally (if at all) similar to the internet café sweepstakes that lie at the heart of this case. Whatever the case, they certainly fall short of the "prima facie identical" comparator standard necessary to state a claim upon which relief can be granted. *George's Place, LLC*, 2012 WL WL 360161, at *8. Crisante's claim is further belied by the fact that the only *actual* similarly situated established referenced in the entire complaint, Mike's Internet, was prosecuted by Defendants in exactly same way as were Plaintiffs. (Dkt. 2, ¶ 52). In other words, and though the Court recognizes that inconsistent pleadings are acceptable on their face, *see* Fed. R. Civ. P. 8(d), the class-of-one legal theory upon which Crisante bases her equal protection claim finds no support whatsoever in her complaint. Crisante has therefore failed to state a claim upon which relief can be granted. *See Douglas Asphalt Co. v. Gore, Inc.*, 541 F.3d 1269, 1275 (11th Cir. 2008) (affirming district court's dismissal on the pleadings because "the complaint fails to allege that [the supposed comparator] was similarly situated "in light of all the factors that would have been objectively reasonable" to [state] officials); *Hawkins*, 2008 WL 2074409, at *4 ("Plaintiff's failure to allege the existence of a factually-similar comparator means there is no way to determine whether Yolanda Anderson was *discriminated* against as a 'class of one,' or whether she was simply the

23

victim of poor law enforcement. The first scenario is actionable under section 1983; the second is not." (emphasis in original)); *see also George's Place, LLC*, 2012 360161, at *9 ("There is insufficient evidence from which the Court could derive that the 'comparators' Plaintiffs cites are 'prima facie identical.'"). Defendants' motion to dismiss Count III is granted without prejudice.

### D. Count IV: Injunctive Relief

Count IV of Plaintiffs' complaint sets forth a claim under § 1983 for "Temporary and Permanent Injunctive Relief." (Dkt. 2, ¶ 152). The Court first notes that neither § 1983 nor the mechanism of injunctive relief is capable of conferring substantive rights. Rather, § 1983 "merely provides a remedy for deprivations of federal statutory and constitutional rights." *Almand v. DeKalb Cnty.*, 103 F.3d 1510, 1512 (11th Cir. 1997). And it goes without saying that injunctive relief, along with money damages, is a quintessential form of judicial *remedy*, not a rights-conferring device in and of itself.

A close reading of Plaintiffs' Count IV, however, reveals that it is actually just a rehashed version of Plaintiffs' First Amendment claim (Count IV). *See* Dkt. 2, ¶¶ 153–56 (requesting injunctive relief to protect Plaintiffs' "First Amendment freedoms" and "rights of free speech and expression"). Despite being clad in different clothing, the substance of this claim is equally unavailing. And because the Court has already granted Defendants' motion to dismiss Count II of Plaintiffs' complaint, it necessarily follows that Count IV fails, too. Defendants' motion to dismiss Count IV is granted with prejudice. That said, if they amend their complaint, Plaintiffs are free to add prayers for

Case No. 8:11-CV-2007-T-17TBM

injunctive relief to the "wherefore" clauses of whatever claims survive the instant motion

to dismiss, as they should have done in styling their complaint in the first instance.

*E. Count V: Replevin*

Count V of Plaintiffs' complaint is purportedly a claim for a "Petition for Writ of

Replevin" "pursuant to 42 U.S.C. § 1983 and Fla. Stat. § 78.01." (Dkt. 2, ¶ 160). The

Court begins by noting that, because replevin is a cause of action sounding in state law,

§ 1983 provides no basis upon which to bring such a claim. *See Albright v. Oliver*, 510

U.S. 266, 269 (1994). All § 1983 claims require that "the plaintiff . . . assert the violation

of a *federal* right." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103,

106 (1989) (emphasis supplied). Because Plaintiffs' replevin action does not seek to

cure the violation of a federal right, § 1983 is not the proper vehicle with which to

pursue this claim. This Court accordingly construes Count V as a mislabeled state law

action for replevin.

Having made that determination, the Court next takes judicial notice of the fact

that the State instituted criminal proceedings against Crisante for violation of its

gambling laws on April 18, 2012. *See* Fed. R. Evid. 201. The Court accordingly finds

itself without jurisdiction over Crisante's replevin claim. *See Gordon*, 2008 WL

3258496, at *7 ("Florida law generally precludes a property owner from maintaining a

replevin action for the return of property seized as evidence in a criminal prosecution."

(citing *Pondella Hall for Hire, Inc. v. City of St. Cloud*, 837 So. 2d 510, 511–12 (Fla. Dist

Ct. App. 2003))); *Oleandi v. State*, 731 So. 2d 4, 6 (Fla. Dist. Ct. App. 1999) ("Once a

25

Case No. 8:11-CV-2007-T-17TBM

criminal prosecution is instituted, the court in which that prosecution is pending acquires

jurisdiction over that property to hear and determine all questions concerning its

ownership if the property seized has an evidentiary purpose."). And insofar as Plaintiffs

seek money damages for the wrongful seizure of their property, they are free to amend

their complaint to add prayers for damages to those claims that survive this order.

Defendants' motion to dismiss Count V is granted without prejudice.

Given the dispositions outlined above, Defendants' motion for a more definite

statement and motion to strike are moot and denied as such. Having said that, it is

**ORDERED** that the Defendants' Motion to Dismiss (Dkt. 26) be **DENIED** as to

Count I, **GRANTED WITH PREJUDICE** as to Counts II and IV, and **GRANTED**

**WITHOUT PREJUDICE** as to Counts III and V. Additionally, Defendants' motion is

**GRANTED WITHOUT PREJUDICE** as to all claims against Defendants Coats in his

individual and official capacities. Plaintiffs have ten (10) days to file an amended

complaint. If none is filed within ten (10) days, Defendants have ten (10) days

thereafter to answer the complaint as it now stands.

Case No. 8:11-CV-2007-T-17TBM

**DONE AND ORDERED** in Chambers, in Tampa, Florida this 2nd day of May, 2012.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.